### PREMIER v. MEEHAFFEE.

(Supreme Court, Appellate Term, First Department. December 17, 1914.)

LANDLORD AND TENANT (§ 114*)—TENANT FROM MONTH TO MONTH.

A tenant originally a tenant from month to month, occupied the premises for nearly 15 years, when they were acquired by plaintiff in December, 1912, who agreed to reduce the rent to $33 until the 1st of May. *Held*, there was no change of the tenancy to a fixed term, ending the 1st of May, 1913, so as to make the defendant holding over after that date liable for the next year's rent; the doctrine of liability of a tenant as a hold-over after the expiration of a lease for a fixed term resting upon the principle that, unless the tenant assumes that the previous lease was renewed, he would be considered as a wrongdoer, and that, rather than allow one to plead and take advantage of his own wrong, the law would apply the renewal of the old lease, and failing when the reason for the rule fails.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 373–381; Dec. Dig. § 114.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Charles W. Premier against Latham Meehaffee. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued November term, 1914, before LEHMAN, DELANY, and WHITAKER, JJ.

James E. Duross, of New York City, for appellant.
Bernard I. Finkelstein, of New York City, for respondent.

LEHMAN, J. For many years prior to August 1, 1914, the defendant was a tenant of premises now owned by the plaintiff. In July,

1914, the defendant vacated these premises, and the plaintiff has re-covered a judgment for the amount of the rent, upon the theory that defendant was a tenant from year to year. It is not disputed that the defendant entered the premises in 1897, before the plaintiff bought the fee, and that he was originally only a tenant from month to month at a monthly rent of $35. It is claimed, however, that in December, 1912, the tenancy was changed to a fixed term, ending May 1, 1913, at a rent of $33, and that the defendant held over after May 1st, and thus became liable for the next year's rent.

The evidence, however, in my opinion, does not bear out this con-tention. The plaintiff testified that in December, 1912, "the rent was $35, and he told me that business is very poor, and he asked me to re-duce the rent and he agreed—or I agreed to reduce the rate to $33 until the 1st of May. After that he kept on paying $33 rent just the same." It would, I think, be torturing this conversation out of its plain sig-nificance to hold that the parties thereby intended to change the hold-ing from a monthly tenancy to a tenancy for a fixed term. The de-fendant at that time had been in possession for a period of over 15 years, and he asked for no change in the terms of his holding, except a reduction of rent. The plaintiff granted the reduction, but stip-ulated that the reduction should continue only until May 1, 1913. Undoubtedly both parties assumed that, inasmuch as the ten-ancy had continued already for 15 years, it would in all probabil-ity continue to and beyond May 1st; but there is practically nothing in the conversation which allows a fair inference that the parties there-by intended to bind themselves that the tenancy was to continue until May 1st.

If, however, we assume that the parties did intend to bind themselves to a lease for a definite term, expiring on May 1st, I do not think that the mere fact that defendant retained the premises after that date made him liable as a hold-over. The doctrine of liability of a tenant as a hold-over after the expiration of a lease for a fixed term rests upon the principle that, unless the tenant assumed that the previous lease was renewed, he must be considered a wrongdoer, and rather than al-low a person to plead that he is a wrongdoer, and take advantage of his own wrong, the law will imply the renewal of the old lease. It is, however, too well established to require citations that the rule fails when the reason for the rule no longer exists. Accordingly, where the tenant remains under circumstances where a different tenancy from that provided in the expired lease can be inferred, or by permission of the landlord, the rule cannot be applied.

In this case, we have the undisputed facts that the tenant in Decem-ber was only a tenant from month to month, and that the landlord then agreed to a change in the arrangement to expire on May 1st. It was, however, certainly never contemplated that the tenant was to remove on May 1st, and the parties evidently intended that the tenancy thereafter was to continue either under the old terms or upon new terms to be then determined on. The plaintiff himself testified that in May "I told Mr. Meehaffee to pay me $35, but he did not. He paid me a check of $33, and I accepted the $33." Certainly it seems to me that this testi-

mony shows that the landlord himself assumed in May that the tenancy was to continue, not under the terms of the agreement expiring May 1st at a rental of $33, but under the terms of the previous month to month holding at a rental of $35, and by accepting the check for $33 merely agreed that the rental under that holding was reduced.

Judgment should therefore be reversed, with costs, and the complaint dismissed, with costs. All concur.